**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN WOOLARD; BREANNA WOOLARD; HECTOR GONZALES; DIANA GONZALES; CARRIE DODSON, | No. 24-4291<br><br>D.C. No. 2:23-cv-02305-JAM-JDP |
| *Plaintiffs - Appellants*,<br>v. | |
| TONY THURMOND; MICHAEL COLEMAN; KRISTIN BLANCO; BARRY LINDAMAN; BREANN MORSE; TED DESTRAMPE; RENE ADAMO; MELISSA BASSANELLI; ZIMA CREASON; PAM COSTA; SAUL HERNANDEZ; BEN AVEY; PAULA VILLESCAZ; TANYA KRAVCHUK; BLUE RIDGE ACADEMY; SAMANTHA HAYNES; JESSIE MARON; VISIONS IN EDUCATION CHARTER SCHOOL; BRIAN ALBRIGHT; STEVE OLMOS; JENNIFER MORRISON; MICAH STUDER; MARK HOLMAN; LISA SOPHOS, | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted June 4, 2025
Pasadena, California

Filed September 11, 2025

Before: Andrew D. Hurwitz, Eric D. Miller, and Jennifer Sung, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[*]

### Free Exercise and Free Speech Clauses of the First Amendment

The panel affirmed the district court's dismissal of a 42 U.S.C. § 1983 action brought by parents and guardians of students enrolled in independent study programs at two California charter schools who alleged First Amendment violations when the schools rejected their requests to purchase and permit the use of sectarian curricular materials for instruction in the schools' programs.

The charter schools rejected the requests because California laws prohibit the teaching of sectarian or

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

denominational doctrine in public schools, including charter schools. Plaintiffs allege that the rejection of their requests pursuant to those laws violates the Free Exercise and Free Speech Clauses of the First Amendment. They contend, among other things, that the charter schools' independent study programs are really in substance homeschooling, not public education, and that the schools' provision of curricular materials should be treated as a generally available public benefit in aid of homeschooling. Pursuant to recent Supreme Court authority, access to such public benefits cannot be denied based on plaintiffs' religious beliefs.

The panel first rejected plaintiffs' Free Exercise Clause claim, holding that even assuming that the funding and materials California provides to parents for use in independent study programs are a generally available public benefit, the independent study programs at issue in this case are sufficiently public to allow California to condition participation on parents' use of secular curricula. The Supreme Court has confirmed that the Free Exercise Clause does not prohibit a state from providing a strictly secular education in its public schools.

The panel next rejected plaintiffs' claim that requiring parents to use state-approved materials in independent study programs that do not reflect their religious views is compelled speech in violation of the Free Speech Clause. The panel held that a public school's curriculum qualifies as government speech and therefore is not subject to scrutiny under the Free Speech Clause.

# COUNSEL

Alexander Kazam (argued) and E. Caroline Freeman, King & Spalding LLP, Washington, D.C.; Nicole Bronnimann, King & Spalding LLP, Houston, Texas; Ethan P. Davis, King & Spalding LLP, San Francisco, California; David J. Hacker and Jeremiah G. Dys, First Liberty Institute, Plano, Texas; Kayla A. Toney and Camille P. Varone, First Liberty Institute, Washington, D.C.; for Plaintiffs-Appellants.

Thomas H. Prouty (argued) and D. Michael Ambrose, Deputy General Counsels; Paul Gant and Bruce Yonehiro, Assistant General Counsels; Len Garfinkel, General Counsel; California Department of Education, Sacramento, California; Kendra J. Hall (argued), Greta A. Proctor, Yulian Y. Kolarov, and Sean M. Sullivan, Procopio Cory Hargreaves & Savitch LLP, San Diego, California; Kevin M. Troy (argued), Paul C. Minney, and Adam D. Afshar, Young Minney & Corr LLP, Sacramento, California; Anthony M. DeMaria, DeMaria Law Firm, Fresno, California; Ross R. Nott and Tanveer Moundi, Spinelli Donald & Nott, Sacramento, California; for Defendant-Appellees.

Christopher Schweickert, Seto Wood & Schweickert LLP, Pleasant Hill, California, for Amici Curiae the Hive Method LLC and Awaken Church DBA Awaken Academy.

Kathryn M. Capizzi, Maynard Nexsen PC, New York, New York; Sue G. Stricklett, American Hindu Coalition, Sterling, Virginia; for Amicus Curiae American Hindu Coalition.

Alexander J. Luchenitser and Luke Anderson, Americans United for Separation of Church and State, Washington, D.C., for Amicus Curiae Americans United for Separation of Church and State.

Christopher A. Brook, Patterson Harkavy LLP, Chapel Hill, North Carolina, for Amici Curiae National Alliance for Public Charter Schools, California Charter Schools Association, Association of Personalized Learning Schools & Services, and Charter Schools Development Center.

Ilya Shapiro and Tim Rosenberger, Manhattan Institute, New York, New York; Nicole S. Garnett, Notre Dame Education Law Project, Notre Dame, Indiana; for Amici Curiae Manhattan Institute and Notre Dame Education Law Project.

Dean McGee and Buck Dougherty, Liberty Justice Center, Austin Texas, for Amicus Curiae Liberty Justice Center.

## OPINION

HURWITZ, Circuit Judge:

California provides free public education through its common schools. *See* Cal. Const. art. IX, § 5. It long did so through brick-and-mortar schools owned and operated by public school districts. *See id.*; Cal. Educ. Code § 35160. In 1992, California authorized the establishment of charter schools, "public schools funded with public money but run by private individuals or entities rather than traditional public school districts." *Today's Fresh Start, Inc. v. L.A. Cnty. Off. of Educ.*, 303 P.3d 1140, 1144 (Cal. 2013); Cal. Educ. Code § 47600 *et seq*. Like traditional public schools, charter schools can provide non-classroom-based instruction, *see* Cal. Educ. Code § 47612.5(d), (e), including "independent study" programs, *id.* § 51747.3, in which parents provide home-based direct instruction approved by

the school and coordinated, evaluated, and supervised by state-certified teachers, *id.* § 51747.5(a). To participate in these programs, parents must enter into a contract with the school specifying the objectives, methods of study, and methods used for evaluating student work. *See id.* § 51747(g)(2), (g)(9)(A)(i). The school is then required to provide appropriate materials and services necessary to achieve the agreement's objectives. *See id.* §§ 51746, 51747(g)(3); Cal. Code Regs. tit. 5, § 11700(i).

The plaintiffs in this 42 U.S.C. § 1983 action are parents and guardians of students enrolled in independent study programs at two California charter schools who requested that the schools purchase and permit the use of sectarian curricular materials for instruction in the programs. The schools rejected those requests because California law provides that "sectarian or denominational doctrine" shall not "be taught, or instruction thereon be permitted, directly or indirectly, in any of the common schools of this State," Cal. Const. art. IX, § 8, and that "a charter school shall be nonsectarian in its programs," Cal. Educ. Code § 47605(e)(1). The plaintiffs claim that the rejection of their request pursuant to those laws violates the Free Exercise and Free Speech Clauses of the First Amendment.

The district court dismissed the operative complaint for failure to state a claim. We affirm.

## I.

## Factual and Procedural Background

John and Breanna Woolard, Hector and Diana Gonzales, and Carrie Dodson (collectively, "Plaintiffs") are parents or guardians of children who were enrolled at two California charter schools, Blue Ridge Academy and Visions in

Education, and participated in the schools' independent study programs.[1]

Plaintiffs each unsuccessfully requested that the charter schools purchase sectarian curricular materials for use in those programs. Blue Ridge denied the Woolards' request to purchase the Bob Jones University "Focus on Fives" curriculum, a "[w]orldview shaping" curriculum that teaches that "God is great, and God is good; God created me and all things; the Bible is God's Word, and it is true; and I learn in order to serve God and others." Blue Ridge denied the Gonzaleses' request to purchase a similar Bob Jones University curriculum and the Woolards' request to purchase "Bede's History of Me," a book that provides "[a] clear way to teach the importance of timelines and how God works in time." Visions denied Dodson's request to purchase "The Good and the Beautiful," a "faith-based curriculum" that emphasizes "family, God, high character, nature, and wholesome literature."

Plaintiffs then sued the two charter schools and some of their officials; officials of the Maricopa Unified School District, the chartering authority for Blue Ridge; officials of the San Juan Unified School District, the chartering authority for Visions; and the State Superintendent of Public Instruction. In dismissing the operative complaint, the district court rejected the free exercise claims because charter schools are public schools "included in California's free public school system," and thus are allowed to provide a strictly secular education. The court rejected Plaintiffs' assertion that they were being "categorically excluded" from a generally available public benefit because of their religious

---

[1] The Woolards' daughter and the Gonzaleses' two grandchildren were enrolled at Blue Ridge; Dodson's son was enrolled at Visions.

exercise, noting that (1) "[t]here are no 'public benefits' in the form of grants or otherwise that the state is excluding Plaintiffs from" and (2) "[t]his case involves California's laws and regulations for state funded public schools, not private schools." Finally, the court held that because a public school's curriculum is government speech, Plaintiffs did not plausibly allege a Free Speech Clause violation.

Plaintiffs timely appealed. We have jurisdiction under 28 U.S.C. § 1291,[2] and "review de novo an order granting a motion to dismiss for failure to state a claim." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

## II.

## Discussion

The Supreme Court has recently confirmed that the Free Exercise Clause does not prohibit a state from providing "a

---

[2] The State Superintendent and Blue Ridge Academy (but not its officials) claim that the Eleventh Amendment deprives an Article III court of jurisdiction over the action as to them. We disagree. Because Plaintiffs seek only prospective non-monetary relief, the *Ex parte Young* exception applies if the defendant state official has "some connection with the enforcement of the act." 209 U.S. 123, 157 (1908). The Superintendent has the requisite connection. He is charged with "[s]uperintend[ing] the schools of this state," Cal. Educ. Code § 33112(a), and with executing the State Board of Education's policies, *id.* § 33111, including those governing independent study programs, *see id.* § 51749.3. And under the test set forth in *Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1030 (9th Cir. 2023) (en banc), the claims against Blue Ridge are also not barred by the Eleventh Amendment. California does not extend governmental immunity to charter schools, *see Wells v. One2One Learning Found.*, 141 P.3d 225, 243 (Cal. 2006), and Blue Ridge is "operated, not by the public school system, but by" a nonprofit public benefit corporation, a "distinct outside entit[y]," *id.* (emphasis omitted).

strictly secular education in its public schools." *Carson v. Makin*, 596 U.S. 767, 785 (2022). Plaintiffs do not dispute this foundational principle but argue that the charter schools' independent study programs are in substance private homeschooling, not public education. Plaintiffs then assert that because California could not exclude potential recipients of state grants for private homeschooling based on religious belief, it cannot refuse to honor their requests for funding of sectarian instruction. Plaintiffs also contend that requiring parents to use state-approved materials in independent study programs that do not reflect their religious views is compelled speech in violation of the Free Speech Clause of the First Amendment. We address these arguments below.

**A.**

We begin with an overview of the legal structure of the California charter school system. As a matter of California law, "charter schools are part of California's single, statewide public school system." *Wilson v. State Bd. of Educ.*, 89 Cal. Rptr. 2d 745, 752 (Ct. App. 1999). Although the defendant charter schools are not operated by public school districts, they are overseen by public "chartering authorities" (school district governing boards) that "approve charters, supervise charter school operations, and revoke charters in the event particular standards and conditions [a]re not met." *Today's Fresh Start*, 303 P.3d at 1144; *see also* Cal. Educ. Code § 47605 (procedure for establishing a charter school); *id.* § 47604.32 (duties of a chartering authority); *id.* § 47607(f)(4) (providing for charter revocation if the charter school "[v]iolated any law"). Like other California public schools, charter schools cannot charge tuition; "cannot discriminate against students on the basis of ethnicity, national origin, gender or disability";

"must meet statewide standards and conduct pupil assessments applicable to pupils in noncharter public schools"; must provide instruction meeting the same statewide standards as other California public schools; and must hire state-certified teachers. *Wilson*, 89 Cal. Rptr. 2d at 753. And charter schools are "eligible equally with other public schools for a share of state and local education funding." *Today's Fresh Start*, 303 P.3d at 1145-46.

Plaintiffs nonetheless argue that the defendant charter schools' independent study programs are really homeschooling and that the schools' provision of curricular materials should be treated as a generally available public benefit in aid of homeschooling, access to which cannot be denied based on Plaintiffs' religious beliefs. The argument is premised on three recent Supreme Court decisions holding that when a state creates a generally available public benefit, it cannot exclude a potential recipient from the benefit because of religious status or religious use. *See Carson*, 596 U.S. at 789 (holding that a state violated the Free Exercise Clause in permitting parents whose children did not have access to a public school to use tuition vouchers at all private schools except religious ones); *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 488-89 (2020) (holding that the exclusion of religious private schools from a state private school scholarship program violated the Free Exercise Clause); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 467 (2017) (holding that a state's denial of a grant to a church for use in upgrading a playground violated the Free Exercise Clause).

At the same time, not all government decisions that engender religious objections impose burdens on religion that fall afoul of the Free Exercise Clause. As the Supreme Court made clear in *Carson*, a state's decision to provide a

"strictly secular" public education does not do so. *See* 596 U.S. at 785. Secular public education neither "coerce[s]" parents "into violating their religious beliefs" nor denies religious parents "an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988).

The parties dispute whether the funding and materials California provides to parents for use in independent study programs are a generally available public benefit. But even assuming that they are, the programs at issue in this case are sufficiently public to allow California to condition participation on parents' use of secular curricula. The status of those programs under California law as part of the state system of public education is consistent with the critical features that the Supreme Court found characteristic of public schools in *Carson*. There, although Maine argued that its program was equivalent to funding a secular public education, the Court identified several important distinctions between public schools and the private schools for which the program paid tuition. 596 U.S. at 782. First, Maine public schools, unlike the state's private schools, "have to accept all students." *Id.* at 783. Second, public schools, unlike private schools, are free to attend. *Id.* Third, public schools must follow extensive state-imposed curricular requirements, while private schools are "subject only to general standards and indicators governing the implementation of their own chosen curriculum" and "need not administer the annual state assessments." *Id.* at 783-84 (cleaned up). Fourth, "other distinctions," like that public schools must "hire state-certified teachers," separate the two. *Id.* at 784.

The independent study programs at issue here share the features of public education that the Court emphasized in

*Carson*. California charter schools operating independent study programs must be free to attend and accept all students for which they have capacity. Cal. Educ. Code § 47605(e)(1), (2). The programs must "be of the same rigor, educational quality, and intellectual challenge substantially equivalent to" classroom-based instruction and must be "aligned to all relevant local and state content standards," including those adopted by the California Board of Education. *Id.* § 51749.5(a)(4)(A); *see id.* § 47605(d)(1); Cal. Code Regs. tit. 5, § 11701.5(a). The state standards for mathematics, for example, are laid out in a 151-page document that gives detailed descriptions of the skills and content that students should master at each grade level. *See* Cal. State Bd. of Educ., California Common Core State Standards: Mathematics (2014), www.cde.ca.gov/be/st/ss/documents/ccssmathstandardaug2013.pdf [https://perma.cc/LV9H-A4R2]. Independent study students must take state assessments that test their ability to meet those standards. Cal. Educ. Code § 47605(d)(1).

In addition, independent study programs must be coordinated and evaluated by, and "under the general supervision of," state-certified teachers. *Id.* § 51747.5(a); *see id.* § 51749.5(a)(3). Those teachers must provide "continuing oversight of the study design, implementation plan, allocation of resources, and evaluation[s]." Cal. Code Regs. tit. 5, § 11700(b) (defining "[g]eneral supervision"). To that end, an independent study student must enter into a written agreement with the school that includes the "objectives and methods of study for the pupil's work, and the methods used to evaluate that work." Cal. Educ. Code § 51747(g)(2). The study methods must be "selected by the supervising teacher as the means to reach the educational objectives," and the evaluation methods must involve "a

certificated teacher personally assess[ing] the extent to which achievement of the pupil . . . meets the objectives of an assignment." Cal. Code Regs. tit. 5, § 11700(e), (f) (defining "[m]ethod utilized to evaluate" and "[m]ethods of study").

California private schools—including private homeschooling programs—are subject to none of those requirements. Instead, they only need to file regular registration affidavits, keep attendance, and provide English-language instruction in broadly framed "areas of study." Cal. Educ. Code §§ 33190, 48222, 51210, 51220. For mathematics in grades 7-12, for example, a curriculum satisfies private-school content standards if it includes "instruction designed to develop mathematical understandings, operational skills, and insight into problem solving procedures." *Id.* § 51220(f). Beyond teaching those general principles, private schools do not need to follow any curricular requirements, and their students do not need to take any statewide tests. Nor does California require that private schools be accredited. *See Private Schools Frequently Asked Questions*, Cal. Dep't of Educ. (Sep. 3, 2025), www.cde.ca.gov/sp/ps/psfaq.asp [https://perma.cc/EZ8K-RUSH]. And private-school teachers do not need to be certified as long as they are "capable of teaching." Cal. Educ. Code § 48222.

Plaintiffs have alleged, and we take as true, that the defendant charter schools provide parents great flexibility to choose which pre-existing curricula to use to educate their children, or to create their own. But with that flexibility comes substantial legal constraints not applicable to private schools. Plaintiffs also emphasize that, unlike in Maine's (and most) public schools, students in the independent study programs receive instruction in their homes, and the direct

educators are their parents. But in contrast to private homeschooling, parents in independent study programs can teach only under the supervision of state employees. The extensive legal requirements applicable to the defendant charter schools' independent study programs make the programs sufficiently public to defeat Plaintiffs' free exercise claim.

**B.**

Plaintiffs' compelled speech claim fares no better. It is premised on the argument that "[w]hen parents in the Blue Ridge and Visions programs select a diverse array of curricula for their children's diverse needs," the parents are speaking, not the government. However, we have held that a public school's curriculum is an "expression of its policy," *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003, 1013-15 (9th Cir. 2000), and that "information and speech . . . present[ed] to school children may be deemed to be part of the school's curriculum and thus School District speech," *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 728 (9th Cir. 2022). Government speech is "not subject to scrutiny under the Free Speech Clause." *Pleasant Grove City v. Summum*, 555 U.S. 460, 464 (2009). Moreover, the state "is not precluded from relying on the government-speech doctrine merely because it solicits assistance from nongovernmental sources." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005).

Citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995), Plaintiffs also argue that a public school cannot discriminate against religious viewpoints when it creates a limited public forum. *Rosenberger*, however, involved a public university's refusal to fund an otherwise-eligible student news organization with a

religious viewpoint. *See id.* at 827. More importantly, it expressly recognized that "[w]hen the University determines the content of the education it provides, it is the University speaking." *Id.* at 833. Just so here. Blue Ridge and Visions, in refusing to permit the use of the requested curricular materials, determined the "content of the education" they would provide and any resulting speech in instruction was theirs, not that of Plaintiffs.

## III.

We **AFFIRM** the judgment of the district court.