**No. 24-4291**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————

JOHN WOOLARD, *et al.*,

*Plaintiffs-Appellants,*

v.

TONY THURMOND, *et al.*,

*Defendants-Appellees.*

————————

On Appeal from the United States District Court
for the Eastern District of California, No. 2:23-cv-02305-JAM-JDP,
Hon. John A. Mendez

————————

### APPELLANTS' PETITION FOR REHEARING EN BANC
————————

David J. Hacker
Jeremiah G. Dys
Kayla A. Toney
FIRST LIBERTY INSTITUTE
2001 W Plano Parkway
Suite 1600
Plano, TX 75075
(972) 941-4444

Alexander Kazam
E. Caroline Freeman
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
akazam@kslaw.com

Nicole Bronnimann
KING & SPALDING LLP
1100 Louisiana Street
Suite 4100
Houston, TX 77002
(713) 751-3200

*Counsel for Plaintiffs-Appellants*

October 24, 2025

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION AND RULE 40(b) STATEMENT ............................... 1

BACKGROUND ................................................................................... 4

    A.    California's programs of private choice exclude religious choices ...................................................................... 4

    B.    The programs invoked California's Blaine Amendment to justify their religious discrimination ............. 8

    C.    California's religious discrimination encompasses both religious content and religious identity .......................... 9

    D.    The programs prohibited the Families from submitting faith-based student work, even when paying out-of-pocket for materials ........................................ 10

    E.    The district court dismissed the complaint and the panel affirmed ...................................................................... 11

ARGUMENT ...................................................................................... 12

I.    The panel decision conflicts with Supreme Court and Ninth Circuit precedent on the Free Exercise Clause by upholding the exclusion of religion from programs of private choice ............. 12

    A.    The panel decision contradicts *Carson*, *Espinoza*, and *Trinity Lutheran*, which prohibit religious discrimination in public benefit programs ............................ 12

    B.    The panel decision threatens parents' fundamental right to direct their children's religious upbringing, as recognized in *Yoder*, *Mahmoud*, and *Espinoza* ................ 16

    C.    The panel decision conflicts with this Court's decision in *Loffman v. California Department of Education* .............. 17

II.    The panel decision conflicts with Supreme Court and Ninth Circuit precedent on the Free Speech Clause ................................ 20

CONCLUSION ....................................................................... 24

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**

*Bd. of Cnty. Comm'rs v. Umbehr,*
518 U.S. 668 (1996) ................................................................. 14

*Carson ex rel. O.C. v. Makin,*
596 U.S. 776 (2022) ....................................................... *passim*

*Espinoza v. Mont. Dep't of Revenue,*
591 U.S. 464 (2020) ....................................................... *passim*

*Fellowship of Christian Athletes*
*v. San Jose Unified Sch. Dist. Bd. of Educ.,*
82 F.4th 664 (9th Cir. 2023) ............................................. 21

*Fulton v. City of Philadelphia,*
593 U.S. 522 (2021) ............................................................... 2

*Good News Club v. Milford Cent. Sch.,*
533 U.S. 98 (2001) ............................................................... 20

*Iancu v. Brunetti,*
588 U.S. 388 (2019) ............................................................. 21

*Kennedy v. Bremerton Sch. Dist.,*
597 U.S. 507 (2022) ............................................................. 20

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,*
508 U.S. 384 (1993) ............................................................. 21

*Loffman v. Cal. Dep't of Educ.,*
119 F.4th 1147 (9th Cir. 2024) .................................. 3, 18, 19

*Mahmoud v. Taylor,*
145 S. Ct. 2332 (2025) ...................................... 3, 15, 16, 17

*Matal v. Tam,*
582 U.S. 218 (2017) ....................................................... 21, 22

*Meyer v. Nebraska*,
262 U.S. 390 (1923) ...................................................................... 17

*Mitchell v. Helms*,
530 U.S. 793 (2000) ........................................................................ 8

*Pleasant Grove City v. Summum*,
555 U.S. 460 (2009) ................................................................ 22, 23

*Prince v. Jacoby*,
303 F.3d 1075 (9th Cir. 2002) ................................................. 3, 21

*Regino v. Staley*,
133 F.4th 951 (9th Cir. 2025) ..................................................... 16

*Rendell-Baker v. Kohn*,
457 U.S. 830 (1982) ...................................................................... 15

*Riley's Am. Heritage Farms v. Elsasser*,
32 F.4th 707 (9th Cir. 2022) ....................................................... 23

*Roman Cath. Diocese v. Cuomo*,
592 U.S. 14 (2020) .......................................................................... 4

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
515 U.S. 819 (1995) ............................................................ 3, 20, 21

*Shurtleff v. City of Boston*,
596 U.S. 243 (2022) ...................................................................... 23

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
582 U.S. 449 (2017) ............................................................ 2, 4, 16

*Wisconsin v. Yoder*,
406 U.S. 205 (1972) ...................................................................... 17

## Constitutional Provisions

Cal. Const. art. IX, § 8 ................................................................ 1, 8

**Statutes**

Cal. Educ. Code § 47605(e)(1) ....................................................... 8

Cal. Educ. Code § 56365(b) .......................................................... 19

Cal. Educ. Code § 56366.10(b) ...................................................... 19

**Rules**

Fed. R. App. 40(b)(2) ................................................................. 2

**Other Authorities**

U.S. Dep't of Educ.,
   *Guidelines on Constitutionally Protected Prayer and
   Religious Expression in Public Elementary and Secondary
   Schools* (Jan. 14, 2025), https://perma.cc/9CD4-WMSN ................... 22

## INTRODUCTION AND RULE 40(b) STATEMENT

If there has been one consistent theme of the Supreme Court's recent religion cases, it is that states cannot discriminate against religion in education-benefit programs. Yet California's Blaine Amendment does just that. California tells parents in homeschool aid programs: "You can choose any books you want, as long as they're not religious." The panel here upheld that blatant discrimination against religion. This Court should grant rehearing en banc to restore religious liberty, free speech, and parental rights.

Two California charter schools, Blue Ridge Academy and Visions in Education, administer homeschool aid programs that promote flexible, individualized learning, where parents choose their own curriculum and teach their own children in their own homes. Yet California wields its Blaine Amendment, Cal. Const. art. IX, § 8, to categorically bar the use or purchase of faith-based curricula with public funds. Officials overseeing the programs prohibited the Woolards from purchasing works by Jonathan Edwards and William Penn; rejected a grammar work sample from the Gonzaleses because it had religious wording; and rejected all submitted work assignments from Carrie Dodson's son—

including a math worksheet—because they came from a faith-based curriculum, even though she purchased it out-of-pocket. Ms. Dodson's son was ultimately expelled for using that curriculum. The panel's approval of homeschool aid programs that "single out" religion for "disfavored treatment," *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 460 (2017), warrants en banc review because the decision conflicts with Supreme Court and circuit precedent and involves questions of "exceptional importance." Fed. R. App. 40(b)(2)(A)-(B), (D).

First, the panel's decision breaches a wall of Supreme Court precedent prohibiting religious discrimination. The Supreme Court has "repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Carson ex rel. O.C. v. Makin*, 596 U.S. 776, 778 (2022) (collecting cases); *Trinity Lutheran*, 582 U.S. at 462; *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 487-88 (2020); *Fulton v. City of Philadelphia*, 593 U.S. 522, 542-43 (2021). The panel defied these precedents by dramatically misconstruing *Carson*'s statement that "Maine may provide a strictly secular education in its public schools." 596 U.S. at 785. While acknowledging that government-directed education in government

2

classrooms *can* be secular, *Carson*'s thrust is clear: where "parents may direct" state funding to the education "of *their* choice," the state may not exclude religious choices. *Id.* California's attempt to treat homeschool parents as state actors threatens parents' fundamental right "to direct the religious upbringing of their children." *Mahmoud v. Taylor*, 145 S. Ct. 2332, 2351 (2025) (quotation marks omitted).

Second, this Court must grant rehearing to address the intra-circuit conflict with *Loffman v. California Department of Education*, 119 F.4th 1147, 1166 (9th Cir. 2024), a decision the panel ignored. Just last year, *Loffman* struck down a similar "nonsectarian" requirement in an education-benefit program, holding that California cannot apply such a restriction to exclude faith-based educational choices. *Id.* at 1153, 1168.

Third, the panel's decision flouts bedrock Supreme Court and Ninth Circuit precedent on viewpoint discrimination. The Free Speech Clause prohibits the government from subsidizing diverse perspectives while excluding religious viewpoints. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 845-46 (1995); *Prince v. Jacoby*, 303 F.3d 1075, 1090-92 (9th Cir. 2002).

These issues are exceptionally important; discrimination against religion is "odious to our Constitution," *Trinity Lutheran*, 582 U.S. at 467, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam) (quotation marks omitted).

## BACKGROUND

### A. California's programs of private choice exclude religious choices.

In the independent study programs at issue here, homeschool parents choose their own curricula that align with their values and educational goals, teaching their own children at home with minimal state involvement. 3-ER-479. Visions in Education, which expelled Ms. Dodson's son, describes its "Home School Academy" program as "offer[ing] curriculum and instructional support to parent educators who choose to homeschool their children," 3-ER-370, and as letting "parents select curriculum and educate their child in their own homes," 3-ER-481 (cleaned up). Visions provides a "student budget" that "parent educators" direct to purchases of "curriculum, materials and support services." 3-ER-481. Blue Ridge Academy describes its similar program, in which the

Woolard and Gonzales families participate, as "designed to be extremely flexible and customizable" to meet each student's "own interests and specific learning needs." 3-ER-506, 3-ER-508. To "allow families flexibility on their personalized learning path," parents direct the use of state funds for their own children, placing orders for books, field trips, technology, and supplies. 3-ER-511-512. Students never attend brick-and-mortar schools, and their parents, not state employees, handle the teaching, planning, and assignment of schoolwork and grades. 3-ER-479-482. Thus, the programs have the key features of homeschooling, not traditional public school.

Plaintiffs-Appellants (the "Families") are three devout Christian families who have made significant sacrifices to homeschool their children using academically rigorous, faith-based curricula that reflect their core beliefs. 3-ER-474, 3-ER-482, 3-ER-486. The Woolards have five children; two were previously enrolled at Blue Ridge, and two are currently enrolled. John is a local pastor and works at a Christian university. 3-ER-482. Hector and Diana Gonzales are guardians of their school-aged grandchildren, C.W.1 and C.W.2, also enrolled at Blue Ridge. 3-ER-476, 3-ER-482. Carrie Dodson, a widowed mother, enrolled her son

5

C.D. in Visions' program in second grade. 3-ER-477. In 2023, Visions expelled C.D. from fifth grade for using religious curricula. 3-ER-477.

These families sit down at the kitchen table to direct their children's education because they care deeply about raising their children according to their faith. 3-ER-474. State involvement is minimal and administrative in nature. With Blue Ridge, the parents meet with a "Homeschool Teacher" every 20 school days who merely reviews attendance records, answers parents' questions, and reviews student work samples for basic criteria like completion. 3-ER-479-480; 3-ER-509. Visions has a similar requirement. 3-ER-371. The "supervision" by charter school employees occurs when they "review and approve all expenditures of instructional budget funds" and "review[] work samples for quality, completion, and mastery of California State Standards." 3-ER-481. Parents assign and teach the learning materials and assign grades. *See, e.g.*, 3-ER-296 (Blue Ridge parent testimonials: "I love that I can pick out our own curriculum"); 3-ER-374 (Visions' charter: "primary educator is the parent/guardian").

But crucially, parents can't make *religious* choices. Blue Ridge officials told the Woolard and Gonzales families that they couldn't use

state funds for "any curriculum products, classes, etc. ... that contain religious content" or are from religious publishers. 3-ER-483; 3-ER-512 ("[a]ll orders must be secular"). Visions told Ms. Dodson she could not use any "faith-based curriculum" or "religious materials," even if purchased with her own funds, and even when supplemented by additional curricula to ensure all state standards were met. 3-ER-487-488. For example, Blue Ridge and Visions denied access to state funds and/or denied credit for student work originating from:

- Historical works by William Penn and Jonathan Edwards, 3-ER-483;
- Math and science books from faith-based publisher Bob Jones University Press, 3-ER-484-485;
- Bob Jones's *Focus on Fives* curriculum (science, social studies, handwriting, phonics, and reading), 3-ER-483;
- Emmaus Classical Academy (economics, history, literature, philosophy, and theology), 3-ER-483, 3-ER-485; and
- *The Good and the Beautiful* curriculum (math, language arts), 3-ER-487.

While Blue Ridge and Visions welcome parents' secular choices, they categorically reject religious choices—regardless of their educational quality. 3-ER-486; 3-ER-487.

### B. The programs invoked California's Blaine Amendment to justify their religious discrimination.

California's no-aid provision or "Blaine Amendment" embodies a doctrine "born of bigotry." *Mitchell v. Helms*, 530 U.S. 793, 828-29 (2000) (plurality opinion). Adopted in 1879, Cal. Const. art. IX, § 8 provides:

> No public money shall ever be appropriated for the support of any sectarian or denominational school, or any school not under the exclusive control of the officers of the public schools; nor shall any sectarian or denominational doctrine be taught, or instruction thereon be permitted, directly or indirectly, in any of the common schools of this State.

The Supreme Court struck down applications of similar provisions three times—in Missouri, Montana, and Maine—as inconsistent with the First Amendment. Nevertheless, both programs invoked California's Blaine Amendment to reject parents' religious choices. 3-ER-475, 3-ER-488; 3-ER-483 (Blue Ridge: California Constitution prohibits teaching and funding of anything "religious or faith-based"); 3-ER-487 (Visions: under California law, "students cannot use religious materials"). When John Woolard cited *Carson* to support his rights, school officials cited California's no-aid provision, claiming *Carson* "does not pertain to CA Education Code." 3-ER-483. The programs also cited California Education Code § 47605(e)(1), which incorporates a "nonsectarian" requirement based on California's no-aid provision. 3-ER-490.

8

### C. California's religious discrimination encompasses both religious content and religious identity.

There is no real dispute that the Families have chosen high-quality curricula and homeschooling approaches that otherwise meet state educational standards—except for religious affiliation. 3-ER-482-486; 3-ER-487-489. The only reasons school officials rejected the Families' choices were their religious content and the publisher's religious identity. AOB 13, 17; 3-ER-487 (Visions told Ms. Dodson her choice "sounds amazing" but they "cannot approve or consider work from a faith-based curriculum"); 3-ER-484 (confirming Blue Ridge's blanket ban on religious organizations as vendors). When Ms. Gonzales tried to purchase math curriculum from Bob Jones University Press, Blue Ridge said, "[i]n order for our school to stay compliant with the state, we cannot approve any religious content curriculum." 3-ER-484-485. They suggested Ms. Gonzales could "order it out of pocket but could not use it for Blue Ridge curriculum/work samples and could not order it with funds." 3-ER-485; *see* 3-ER-486 (noting "significant financial hardship" on Woolard and Gonzales families due to denial of funds). Blue Ridge continually rejects work samples with *and without* any religious content, merely because of a religious university's copyright. 3-ER-486.

9

Ms. Dodson, who did not use instructional funds because Visions prohibited her religious choice, purchased *The Good and the Beautiful* curriculum with her own funds. 3-ER-491-492. Yet Visions told her they would not "consider for instruction or attendance any faith-based materials." 3-ER-487. Visions rejected C.D.'s math worksheet, with no religious language, solely because its publisher was religious. 3-ER-518; 3-ER-488.

### D. The programs prohibited the Families from submitting faith-based student work, even when paying out-of-pocket for materials.

California's discrimination extends to the content of students' work. Visions refused to award attendance or completion credit for any of C.D.'s submitted schoolwork. 3-ER-488-489. Visions then expelled C.D. 3-ER-489. School administrators admitted C.D. had no academic deficiency; their sole objection to his submissions was the religious viewpoint of his curriculum. 3-ER-489. Similarly, Blue Ridge rejects children's work samples if they reference God. 3-ER-486; 3-ER-516, 3-ER-485 (Blue Ridge stating that it "can't accept any work sample with any religious wording on it" and rejecting grammar worksheet that said "God sends the rain to help plants grow"). California's message is clear: religious families cannot

participate in these programs of private choice available to everyone else, even if paying out-of-pocket, unless they suppress their religious identity.

### E. The district court dismissed the complaint and the panel affirmed.

Both programs refused the Families' requests to participate fully in the homeschooling programs without surrendering their constitutional rights. In October 2023, the Families sued, seeking declaratory and injunctive relief and nominal damages. 3-ER-501-502. All Defendants moved to dismiss for failure to state a claim (and on other grounds not relevant here). 3-ER-533-544 (Dkts. 24-1, 39-1).

The district court dismissed the complaint with prejudice, without any hearing. 1-ER-3-16. Adopting the position that parental choice is not meaningful unless it is unfettered, the court emphasized that in its view, the Families "do not have the right under California law to *independently* choose instructional materials" and that "curriculum materials in these programs are strictly monitored." 1-ER-12-13 (emphasis added) (cleaned up). The court labeled the programs "public homeschool," not "private homeschool," and held that they could exclude religion because "a public school's curriculum is a form of government speech, not speech of a teacher, parent, or student." 1-ER-13, 14.

11

The panel affirmed. Based on a single sentence in *Carson* acknowledging that public schools can be secular, the panel misapplied *Carson*'s holding and blessed California's exclusion of religious options from an otherwise publicly available benefit. Op.10-11. The panel skipped any meaningful free exercise analysis, not even analyzing the case under the tiers of scrutiny. Op.11. And the panel mischaracterized the Families' viewpoint discrimination claims as "compelled speech" claims while also classifying homeschool parents' instruction of their children as "government speech." Op.14-15.

## ARGUMENT

I. **The panel decision conflicts with Supreme Court and Ninth Circuit precedent on the Free Exercise Clause by upholding the exclusion of religion from programs of private choice.**

A. **The panel decision contradicts *Carson*, *Espinoza*, and *Trinity Lutheran*, which prohibit religious discrimination in public benefit programs.**

The Supreme Court has repeatedly held that a "State need not subsidize private education," but "once a State decides to do so, it cannot disqualify some private schools solely because they are religious." *Carson*, 596 U.S. at 785 (quoting *Espinoza*, 591 U.S. at 487). The public benefit in *Carson* was "tuition assistance that parents may direct to the public or private schools of *their* choice." *Id.* Here, the benefit is financial

12

assistance that "parents may direct to the [curriculum providers] of *their* choice." As in *Carson* and *Espinoza*, the State "cannot disqualify" some homeschool curricula, whether for funding or academic credit, "solely because they are religious." *Id.*

Defying Supreme Court instruction, the panel permitted just that. The panel did not dispute that the homeschool programs are a "generally available public benefit" and acknowledged that these programs exclude families' religious choices. Op.11. Yet the panel blessed this exclusion of religion, distorting *Carson*'s statement that "[a state] may provide a strictly secular education in its public schools." 596 U.S. at 785. Taking that snippet out of context, the panel attempted to graft it onto the homeschool aid programs here.

In *Carson*, Maine similarly argued that "[t]he public benefit … is a free public education." 596 U.S. at 782 (quotation marks omitted). Although the benefit was tuition aid that could go to private schools, Maine contended that "the benefit was properly viewed ... as funding for the rough equivalent of the public school education that Maine may permissibly require to be secular." *Id.* (quotation marks omitted). But the Supreme Court rejected Maine's self-serving characterization,

13

emphasizing that the First Amendment turns on the "substance of free exercise protections," not "on the presence or absence of magic words." *Id.* at 785; *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 679 (1996) (First Amendment protections cannot turn on "state law labels"). Since "[t]he definition of a particular program can always be manipulated," the Court explained that "to allow States to recast a condition on funding in this manner would be to see the First Amendment reduced to a simple semantic exercise." *Carson*, 596 U.S. at 784 (cleaned up). However Maine labeled the program, it could not exclude religious options from its subsidy of educational choices. *Id.* Likewise, in *Espinoza*, the Supreme Court determined that the application of Montana's no-aid provision unconstitutionally "bars parents who wish to send their children to a religious school from those same benefits, again solely because of the religious character." 591 U.S. at 475-76.

So too here. Defendants' characterization of the homeschool programs as "public education" doesn't matter because "[t]he differences" between conventional public schooling and homeschooling with parent-chosen curricula are "numerous and important." *Carson*, 596 U.S. at 783. There is a world of difference between government employees teaching

government-mandated curriculum in government classrooms, and parents teaching their own children their chosen curriculum at home. Parents are not mere agents of the state when they instruct their own children with limited regulatory oversight. And the Supreme Court has "long recognized the rights of parents to direct the religious upbringing of their children." *Mahmoud*, 145 S. Ct. at 2350 (quoting *Espinoza*, 591 U.S. at 486).

The panel made two fundamental errors in evaluating the homeschooling programs. First, it focused on whether the programs are "public," Op.9-10, when what matters under *Carson* and *Espinoza* is that the programs feature *parental choice*. Having chosen to subsidize parents' educational choices, California cannot mandate secularism and exclude religion. Second, the panel emphasized what it called "extensive legal requirements" that apply to the programs, including high-level "supervision" over parents' curriculum choices. Op.12-14. But Supreme Court precedent makes clear that mere "regulation, even if 'extensive and detailed,'" does not "make a [private actor's] actions state action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) (quotation marks omitted). *Carson*'s parents could choose only among private schools

15

"approved" by the Maine Department of Education. 596 U.S. at 773-74.
Approval hinged on meeting certain "requirements under Maine's
compulsory education law." *Id.* While the parents in *Carson* thus lacked
unilateral power to direct the benefit, the program was one of "private
choice" in the constitutionally relevant sense, because aid would not flow
without the parents' voluntary decision. Similarly, parents in the Blue
Ridge and Visions programs direct the funds for their own children's
benefit. 3-ER-481; 3-ER-511. California cannot exploit state-action
doctrine to "single out the religious for disfavored treatment." *Trinity
Lutheran*, 582 U.S. at 460.

**B.   The panel decision threatens parents' fundamental
right to direct their children's religious upbringing, as
recognized in *Yoder*, *Mahmoud*, and *Espinoza*.**

The panel's expansion of "public school" to swallow parent-led
instruction at home jeopardizes a century of jurisprudence "'[d]rawing on
enduring American tradition'" and forming "a generous measure of
protection" for "[t]he practice of educating one's children in one's religious
beliefs." *Mahmoud*, 145 S. Ct. at 2351 (quoting *Espinoza*, 591 U.S. at
486); *Regino v. Staley*, 133 F.4th 951, 965 (9th Cir. 2025) (describing
parents' right to "control the education of their own" children (quoting

16

*Meyer v. Nebraska*, 262 U.S. 390, 401 (1923))). Since this right "follow[s] ... children into the public school classroom," it "is not *merely* a right to teach religion in the confines of one's own home," but it certainly includes that core right. *Mahmoud*, 145 S. Ct. at 2351 (emphasis added).

The panel ignored the implications of its decision for that fundamental right, which was recognized in *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972), *see* 3-ER-500; AOB 54-55, 61, and reaffirmed in *Espinoza* and *Mahmoud*. If mere regulation or oversight of homeschooling were sufficient to treat homeschooling as state education that can be strictly secular, as the panel reasoned, then a state could effectively eliminate religious homeschooling on the pretense that it is equivalent to public school. Yet as the Supreme Court has long recognized, it is both the "right" and "the natural duty of the parent to give his children education suitable to their station in life." *Meyer*, 262 U.S. at 400.

## C. The panel decision conflicts with this Court's decision in *Loffman v. California Department of Education*.

This Court should also grant *en banc* review to resolve an intra-circuit conflict. *Loffman* invalidated a state-law "nonsectarian" requirement applied to a California education-benefit program. Although

17

*Loffman* is directly relevant and the parties briefed it extensively, the panel disregarded it altogether.

In *Loffman*, this Court addressed a program that funds placements of students with disabilities at private schools as a means of providing "free appropriate public education" under the Individuals with Disabilities Education Act. 119 F.4th at 1154-58 (quotation marks omitted). California law required private schools to be "nonsectarian" to receive that funding. *Id.* at 1152. That exclusion forced the *Loffman* plaintiffs to choose between exercising their Orthodox Jewish faith (which requires them to provide their children a religious education) and accessing a public benefit for which they otherwise qualified. *Id.* at 1158, 1168. The plaintiffs had thus "plausibly alleged that the nonsectarian requirement violates their rights under the Free Exercise Clause." *Id.* at 1153.

*Loffman* correctly applies the Supreme Court's directive in *Carson* to look at the substance of benefit programs, not state-law labels. *Loffman* repudiates the panel's myopic focus on whether the programs are "public." Op.9-10. Even if students become eligible for a benefit by enrolling in public school, nonsectarian conditions still infringe their free

exercise rights. 119 F.4th at 1168 (free exercise burden was unconstitutional where plaintiffs had "to choose between the special education benefits made available through public school enrollment ... and education in an Orthodox Jewish setting").

*Loffman* also shows that even "extensive legal requirements" cannot destroy the Families' free-exercise claim. Op.14. Superintendent Thurmond and the other *Loffman* defendants similarly invoked state regulations in attempting to demonstrate that the benefit was "sufficiently public" to exclude religious options. Op.14; *Loffman*, 119 F.4th at 1157-58 (noting regulations providing that students in private placements were "deemed to be enrolled in public schools" for state funding purposes, Cal. Educ. Code § 56365(b), and that private schools needed "state-adopted, standards-based, core curriculum," *id.* § 56366.10(b)(1))). Despite these regulations, *Loffman* held that religious discrimination was still unconstitutional. And even though "ultimately" the placement decisions rested with local education agencies, excluding religious options from the benefit program deprived families of their ability to "advocate" for religious school placement. *Loffman*, 119 F.4th at 1162, 1167-68. Here, the programs have *more* private choice. While

19

California could mandate the curriculum for its independent-study homeschool programs, it doesn't—yet it deprives religious families of religious choices. That singling out of religion infringes the Families' free-exercise rights.

## II. The panel decision conflicts with Supreme Court and Ninth Circuit precedent on the Free Speech Clause.

The Families' viewpoint discrimination claims challenge two unconstitutional practices: (1) refusal to accept student work samples reflecting religious viewpoints, and (2) exclusion of faith-based instructional options. 3-ER-475; 3-ER-480; 3-ER-485-489. In addition to mischaracterizing these claims as a single "[c]ompelled speech claim," Op.14, the panel ignored the first claim and rejected the second by expanding the government-speech doctrine beyond recognition.

The First Amendment "doubly protects religious speech." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 523 (2022). When the government opens a forum for a "diversity of views from private speakers," it cannot discriminate based on viewpoint. *Rosenberger*, 515 U.S. at 834; *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001) (public school's "exclusion of the Good News Club based on its religious nature … constitutes viewpoint discrimination"); *Lamb's Chapel v. Ctr. Moriches*

*Union Free Sch. Dist.*, 508 U.S. 384, 393 (1993) (viewpoint discrimination "to permit school property to be used for the presentation of all views ... except those ... from a religious standpoint"); *see also Iancu v. Brunetti*, 588 U.S. 388, 393 (2019) (applying "'bedrock First Amendment principle' that the government cannot discriminate against 'ideas that offend'" (quoting *Matal v. Tam*, 582 U.S. 218, 223 (2017))).

The Families are quintessential private speakers; the parents choose what to teach and the children choose what to write in their work samples. By welcoming families' choices yet banning curricula and work samples that reflect religion, Defendants are "silenc[ing] the expression of selected viewpoints." *Rosenberger*, 515 U.S. at 835. Such "viewpoint discrimination ... cannot be sustained under the [F]ree [S]peech [C]lause." *Prince*, 303 F.3d at 1092; *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 712 (9th Cir. 2023) (en banc) (Forrest, J., concurring) (school district violated the First Amendment by "impermissibly picking and choosing which viewpoints are acceptable" for a student organization to hold).

The panel missed the student-viewpoint claim entirely and recast homeschool parents as government mouthpieces, conflating parent-

directed choices with state-mandated public-school curriculum. The panel explained away *Rosenberger* by claiming that Blue Ridge and Visions "determine[] the content of the education." Op.15. But they don't. These programs could mandate the same curriculum for everyone, but instead they welcome diverse parent choices—except when those choices are religious. And even in traditional public schools, students can't be expelled or denied academic credit for expressing religious perspectives. *See* U.S. Dep't of Educ., *Guidelines on Constitutionally Protected Prayer and Religious Expression in Public Elementary and Secondary Schools* (Jan. 14, 2025), https://perma.cc/9CD4-WMSN ("Students may express their beliefs about religion in homework, artwork, and other written and oral assignments free from discrimination based on the religious perspective of their submissions."). Yet that is what happened to C.D. and what continues to happen to the other children. 3-ER-488-489; 3-ER-485.

Because "[g]overnment speech is 'not subject to scrutiny under the Free Speech Clause,'" Op.14 (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 464 (2009)), the Supreme Court has cautioned that the doctrine is "susceptible to dangerous misuse," *Matal*, 582 U.S. at 235; *see*

22

*Shurtleff v. City of Boston*, 596 U.S. 243, 262 (2022) (Alito, J., concurring in judgment) ("[C]ourts must be very careful when a government claims that speech by … private speakers is actually government speech"); *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 728 (9th Cir. 2022) (noting that "speech … cannot be reasonably viewed as coming from the government" when it occurs in a "personal" context). Here, the panel endorsed California's misuse of the government-speech doctrine "as a subterfuge for favoring certain private speakers over others based on viewpoint." *Shurtleff*, 596 U.S. at 262 (Alito, J., concurring in judgment) (quoting *Summum*, 555 U.S. at 473). Reversal en banc is necessary to restore vital protections for religious speech and prevent the government-speech doctrine from being weaponized to censor disfavored views.

## CONCLUSION

The Court should grant rehearing en banc.

Respectfully submitted,

*/s/ Alexander Kazam*

David J. Hacker
Jeremiah G. Dys
Kayla A. Toney
FIRST LIBERTY INSTITUTE
2001 W Plano Parkway
Suite 1600
Plano, TX 75075
(972) 941-4444

Alexander Kazam
E. Caroline Freeman
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
akazam@kslaw.com

Nicole Bronnimann
KING & SPALDING LLP
1100 Louisiana Street
Suite 4100
Houston, TX 77002
(713) 751-3200

*Counsel for Plaintiffs-Appellants*

October 24, 2025

## CERTIFICATE OF COMPLIANCE

I certify that:

1. This document complies with the length limitation of Circuit Rule 40-1(b) because it contains 4,200 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2. This document complies with the typeface and type-style requirements of Fed. R. App. P. 27(a)(5)–(6), because it has been prepared in a proportionally spaced typeface using Century Schoolbook size 14-point font with Microsoft Word.

Date: October 24, 2025

/s/ *Alexander Kazam*
Alexander Kazam

*Counsel for Plaintiffs-Appellants*

**ADDENDUM**

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN WOOLARD; BREANNA WOOLARD; HECTOR GONZALES; DIANA GONZALES; CARRIE DODSON, | No. 24-4291 |
| | D.C. No. 2:23-cv-02305-JAM-JDP |
| *Plaintiffs - Appellants*, | |
| v. | |
| TONY THURMOND; MICHAEL COLEMAN; KRISTIN BLANCO; BARRY LINDAMAN; BREANN MORSE; TED DESTRAMPE; RENE ADAMO; MELISSA BASSANELLI; ZIMA CREASON; PAM COSTA; SAUL HERNANDEZ; BEN AVEY; PAULA VILLESCAZ; TANYA KRAVCHUK; BLUE RIDGE ACADEMY; SAMANTHA HAYNES; JESSIE MARON; VISIONS IN EDUCATION CHARTER SCHOOL; BRIAN ALBRIGHT; STEVE OLMOS; JENNIFER MORRISON; MICAH STUDER; MARK HOLMAN; LISA SOPHOS, | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted June 4, 2025
Pasadena, California

Filed September 11, 2025

Before: Andrew D. Hurwitz, Eric D. Miller, and Jennifer
Sung, Circuit Judges.

Opinion by Judge Hurwitz

---

## SUMMARY[*]

---

### Free Exercise and Free Speech Clauses of the First Amendment

The panel affirmed the district court's dismissal of a 42
U.S.C. § 1983 action brought by parents and guardians of
students enrolled in independent study programs at two
California charter schools who alleged First Amendment
violations when the schools rejected their requests to
purchase and permit the use of sectarian curricular materials
for instruction in the schools' programs.

The charter schools rejected the requests because
California laws prohibit the teaching of sectarian or

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

denominational doctrine in public schools, including charter schools.  Plaintiffs allege that the rejection of their requests pursuant to those laws violates the Free Exercise and Free Speech Clauses of the First Amendment.  They contend, among other things, that the charter schools' independent study programs are really in substance homeschooling, not public education, and that the schools' provision of curricular materials should be treated as a generally available public benefit in aid of homeschooling.  Pursuant to recent Supreme Court authority, access to such public benefits cannot be denied based on plaintiffs' religious beliefs.

The panel first rejected plaintiffs' Free Exercise Clause claim, holding that even assuming that the funding and materials California provides to parents for use in independent study programs are a generally available public benefit, the independent study programs at issue in this case are sufficiently public to allow California to condition participation on parents' use of secular curricula.  The Supreme Court has confirmed that the Free Exercise Clause does not prohibit a state from providing a strictly secular education in its public schools.

The panel next rejected plaintiffs' claim that requiring parents to use state-approved materials in independent study programs that do not reflect their religious views is compelled speech in violation of the Free Speech Clause. The panel held that a public school's curriculum qualifies as government speech and therefore is not subject to scrutiny under the Free Speech Clause.

# COUNSEL

Alexander Kazam (argued) and E. Caroline Freeman, King
& Spalding LLP, Washington, D.C.; Nicole Bronnimann,
King & Spalding LLP, Houston, Texas; Ethan P. Davis,
King & Spalding LLP, San Francisco, California; David J.
Hacker and Jeremiah G. Dys, First Liberty Institute, Plano,
Texas; Kayla A. Toney and Camille P. Varone, First Liberty
Institute, Washington, D.C.; for Plaintiffs-Appellants.

Thomas H. Prouty (argued) and D. Michael Ambrose,
Deputy General Counsels; Paul Gant and Bruce Yonehiro,
Assistant General Counsels; Len Garfinkel, General
Counsel; California Department of Education, Sacramento,
California; Kendra J. Hall (argued), Greta A. Proctor, Yulian
Y. Kolarov, and Sean M. Sullivan, Procopio Cory
Hargreaves & Savitch LLP, San Diego, California; Kevin M.
Troy (argued), Paul C. Minney, and Adam D. Afshar, Young
Minney & Corr LLP, Sacramento, California; Anthony M.
DeMaria, DeMaria Law Firm, Fresno, California; Ross R.
Nott and Tanveer Moundi, Spinelli Donald & Nott,
Sacramento, California; for Defendant-Appellees.

Christopher Schweickert, Seto Wood & Schweickert LLP,
Pleasant Hill, California, for Amici Curiae the Hive Method
LLC and Awaken Church DBA Awaken Academy.

Kathryn M. Capizzi, Maynard Nexsen PC, New York, New
York; Sue G. Stricklett, American Hindu Coalition, Sterling,
Virginia; for Amicus Curiae American Hindu Coalition.

Alexander J. Luchenitser and Luke Anderson, Americans
United for Separation of Church and State, Washington,
D.C., for Amicus Curiae Americans United for Separation
of Church and State.

Christopher A. Brook, Patterson Harkavy LLP, Chapel Hill, North Carolina, for Amici Curiae National Alliance for Public Charter Schools, California Charter Schools Association, Association of Personalized Learning Schools & Services, and Charter Schools Development Center.

Ilya Shapiro and Tim Rosenberger, Manhattan Institute, New York, New York; Nicole S. Garnett, Notre Dame Education Law Project, Notre Dame, Indiana; for Amici Curiae Manhattan Institute and Notre Dame Education Law Project.

Dean McGee and Buck Dougherty, Liberty Justice Center, Austin Texas, for Amicus Curiae Liberty Justice Center.

---

## OPINION

HURWITZ, Circuit Judge:

California provides free public education through its common schools. *See* Cal. Const. art. IX, § 5. It long did so through brick-and-mortar schools owned and operated by public school districts. *See id.*; Cal. Educ. Code § 35160. In 1992, California authorized the establishment of charter schools, "public schools funded with public money but run by private individuals or entities rather than traditional public school districts." *Today's Fresh Start, Inc. v. L.A. Cnty. Off. of Educ.*, 303 P.3d 1140, 1144 (Cal. 2013); Cal. Educ. Code § 47600 *et seq*. Like traditional public schools, charter schools can provide non-classroom-based instruction, *see* Cal. Educ. Code § 47612.5(d), (e), including "independent study" programs, *id.* § 51747.3, in which parents provide home-based direct instruction approved by

the school and coordinated, evaluated, and supervised by state-certified teachers, *id.* § 51747.5(a). To participate in these programs, parents must enter into a contract with the school specifying the objectives, methods of study, and methods used for evaluating student work. *See id.* § 51747(g)(2), (g)(9)(A)(i). The school is then required to provide appropriate materials and services necessary to achieve the agreement's objectives. *See id.* §§ 51746, 51747(g)(3); Cal. Code Regs. tit. 5, § 11700(i).

The plaintiffs in this 42 U.S.C. § 1983 action are parents and guardians of students enrolled in independent study programs at two California charter schools who requested that the schools purchase and permit the use of sectarian curricular materials for instruction in the programs. The schools rejected those requests because California law provides that "sectarian or denominational doctrine" shall not "be taught, or instruction thereon be permitted, directly or indirectly, in any of the common schools of this State," Cal. Const. art. IX, § 8, and that "a charter school shall be nonsectarian in its programs," Cal. Educ. Code § 47605(e)(1). The plaintiffs claim that the rejection of their request pursuant to those laws violates the Free Exercise and Free Speech Clauses of the First Amendment.

The district court dismissed the operative complaint for failure to state a claim. We affirm.

# I.

## Factual and Procedural Background

John and Breanna Woolard, Hector and Diana Gonzales, and Carrie Dodson (collectively, "Plaintiffs") are parents or guardians of children who were enrolled at two California charter schools, Blue Ridge Academy and Visions in

Education, and participated in the schools' independent study programs.[1]

Plaintiffs each unsuccessfully requested that the charter schools purchase sectarian curricular materials for use in those programs. Blue Ridge denied the Woolards' request to purchase the Bob Jones University "Focus on Fives" curriculum, a "[w]orldview shaping" curriculum that teaches that "God is great, and God is good; God created me and all things; the Bible is God's Word, and it is true; and I learn in order to serve God and others." Blue Ridge denied the Gonzaleses' request to purchase a similar Bob Jones University curriculum and the Woolards' request to purchase "Bede's History of Me," a book that provides "[a] clear way to teach the importance of timelines and how God works in time." Visions denied Dodson's request to purchase "The Good and the Beautiful," a "faith-based curriculum" that emphasizes "family, God, high character, nature, and wholesome literature."

Plaintiffs then sued the two charter schools and some of their officials; officials of the Maricopa Unified School District, the chartering authority for Blue Ridge; officials of the San Juan Unified School District, the chartering authority for Visions; and the State Superintendent of Public Instruction. In dismissing the operative complaint, the district court rejected the free exercise claims because charter schools are public schools "included in California's free public school system," and thus are allowed to provide a strictly secular education. The court rejected Plaintiffs' assertion that they were being "categorically excluded" from a generally available public benefit because of their religious

---

[1] The Woolards' daughter and the Gonzaleses' two grandchildren were enrolled at Blue Ridge; Dodson's son was enrolled at Visions.

exercise, noting that (1) "[t]here are no 'public benefits' in the form of grants or otherwise that the state is excluding Plaintiffs from" and (2) "[t]his case involves California's laws and regulations for state funded public schools, not private schools." Finally, the court held that because a public school's curriculum is government speech, Plaintiffs did not plausibly allege a Free Speech Clause violation.

Plaintiffs timely appealed. We have jurisdiction under 28 U.S.C. § 1291,[2] and "review de novo an order granting a motion to dismiss for failure to state a claim." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021).

## II.

## Discussion

The Supreme Court has recently confirmed that the Free Exercise Clause does not prohibit a state from providing "a

---

[2] The State Superintendent and Blue Ridge Academy (but not its officials) claim that the Eleventh Amendment deprives an Article III court of jurisdiction over the action as to them. We disagree. Because Plaintiffs seek only prospective non-monetary relief, the *Ex parte Young* exception applies if the defendant state official has "some connection with the enforcement of the act." 209 U.S. 123, 157 (1908). The Superintendent has the requisite connection. He is charged with "[s]uperintend[ing] the schools of this state," Cal. Educ. Code § 33112(a), and with executing the State Board of Education's policies, *id.* § 33111, including those governing independent study programs, *see id.* § 51749.3. And under the test set forth in *Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1030 (9th Cir. 2023) (en banc), the claims against Blue Ridge are also not barred by the Eleventh Amendment. California does not extend governmental immunity to charter schools, *see Wells v. One2One Learning Found.*, 141 P.3d 225, 243 (Cal. 2006), and Blue Ridge is "operated, not by the public school system, but by" a nonprofit public benefit corporation, a "distinct outside entit[y]," *id.* (emphasis omitted).

strictly secular education in its public schools." *Carson v. Makin*, 596 U.S. 767, 785 (2022). Plaintiffs do not dispute this foundational principle but argue that the charter schools' independent study programs are in substance private homeschooling, not public education. Plaintiffs then assert that because California could not exclude potential recipients of state grants for private homeschooling based on religious belief, it cannot refuse to honor their requests for funding of sectarian instruction. Plaintiffs also contend that requiring parents to use state-approved materials in independent study programs that do not reflect their religious views is compelled speech in violation of the Free Speech Clause of the First Amendment. We address these arguments below.

## A.

We begin with an overview of the legal structure of the California charter school system. As a matter of California law, "charter schools are part of California's single, statewide public school system." *Wilson v. State Bd. of Educ.*, 89 Cal. Rptr. 2d 745, 752 (Ct. App. 1999). Although the defendant charter schools are not operated by public school districts, they are overseen by public "chartering authorities" (school district governing boards) that "approve charters, supervise charter school operations, and revoke charters in the event particular standards and conditions [a]re not met." *Today's Fresh Start*, 303 P.3d at 1144; *see also* Cal. Educ. Code § 47605 (procedure for establishing a charter school); *id.* § 47604.32 (duties of a chartering authority); *id.* § 47607(f)(4) (providing for charter revocation if the charter school "[v]iolated any law"). Like other California public schools, charter schools cannot charge tuition; "cannot discriminate against students on the basis of ethnicity, national origin, gender or disability";

"must meet statewide standards and conduct pupil assessments applicable to pupils in noncharter public schools"; must provide instruction meeting the same statewide standards as other California public schools; and must hire state-certified teachers. *Wilson*, 89 Cal. Rptr. 2d at 753. And charter schools are "eligible equally with other public schools for a share of state and local education funding." *Today's Fresh Start*, 303 P.3d at 1145-46.

Plaintiffs nonetheless argue that the defendant charter schools' independent study programs are really homeschooling and that the schools' provision of curricular materials should be treated as a generally available public benefit in aid of homeschooling, access to which cannot be denied based on Plaintiffs' religious beliefs. The argument is premised on three recent Supreme Court decisions holding that when a state creates a generally available public benefit, it cannot exclude a potential recipient from the benefit because of religious status or religious use. *See Carson*, 596 U.S. at 789 (holding that a state violated the Free Exercise Clause in permitting parents whose children did not have access to a public school to use tuition vouchers at all private schools except religious ones); *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 488-89 (2020) (holding that the exclusion of religious private schools from a state private school scholarship program violated the Free Exercise Clause); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 467 (2017) (holding that a state's denial of a grant to a church for use in upgrading a playground violated the Free Exercise Clause).

At the same time, not all government decisions that engender religious objections impose burdens on religion that fall afoul of the Free Exercise Clause. As the Supreme Court made clear in *Carson*, a state's decision to provide a

"strictly secular" public education does not do so. *See* 596 U.S. at 785. Secular public education neither "coerce[s] parents "into violating their religious beliefs" nor denies religious parents "an equal share of the rights, benefits, and privileges enjoyed by other citizens." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988).

The parties dispute whether the funding and materials California provides to parents for use in independent study programs are a generally available public benefit. But even assuming that they are, the programs at issue in this case are sufficiently public to allow California to condition participation on parents' use of secular curricula. The status of those programs under California law as part of the state system of public education is consistent with the critical features that the Supreme Court found characteristic of public schools in *Carson*. There, although Maine argued that its program was equivalent to funding a secular public education, the Court identified several important distinctions between public schools and the private schools for which the program paid tuition. 596 U.S. at 782. First, Maine public schools, unlike the state's private schools, "have to accept all students." *Id.* at 783. Second, public schools, unlike private schools, are free to attend. *Id.* Third, public schools must follow extensive state-imposed curricular requirements, while private schools are "subject only to general standards and indicators governing the implementation of their own chosen curriculum" and "need not administer the annual state assessments." *Id.* at 783-84 (cleaned up). Fourth, "other distinctions," like that public schools must "hire state-certified teachers," separate the two. *Id.* at 784.

The independent study programs at issue here share the features of public education that the Court emphasized in

*Carson*. California charter schools operating independent study programs must be free to attend and accept all students for which they have capacity. Cal. Educ. Code § 47605(e)(1), (2). The programs must "be of the same rigor, educational quality, and intellectual challenge substantially equivalent to" classroom-based instruction and must be "aligned to all relevant local and state content standards," including those adopted by the California Board of Education. *Id.* § 51749.5(a)(4)(A); *see id.* § 47605(d)(1); Cal. Code Regs. tit. 5, § 11701.5(a). The state standards for mathematics, for example, are laid out in a 151-page document that gives detailed descriptions of the skills and content that students should master at each grade level. *See* Cal. State Bd. of Educ., California Common Core State Standards: Mathematics (2014), www.cde.ca.gov/be/st/ss/documents/ccssmathstandardaug2 013.pdf [https://perma.cc/LV9H-A4R2]. Independent study students must take state assessments that test their ability to meet those standards. Cal. Educ. Code § 47605(d)(1).

In addition, independent study programs must be coordinated and evaluated by, and "under the general supervision of," state-certified teachers. *Id.* § 51747.5(a); *see id.* § 51749.5(a)(3). Those teachers must provide "continuing oversight of the study design, implementation plan, allocation of resources, and evaluation[s]." Cal. Code Regs. tit. 5, § 11700(b) (defining "[g]eneral supervision"). To that end, an independent study student must enter into a written agreement with the school that includes the "objectives and methods of study for the pupil's work, and the methods used to evaluate that work." Cal. Educ. Code § 51747(g)(2). The study methods must be "selected by the supervising teacher as the means to reach the educational objectives," and the evaluation methods must involve "a

certificated teacher personally assess[ing] the extent to which achievement of the pupil . . . meets the objectives of an assignment." Cal. Code Regs. tit. 5, § 11700(e), (f) (defining "[m]ethod utilized to evaluate" and "[m]ethods of study").

California private schools—including private homeschooling programs—are subject to none of those requirements. Instead, they only need to file regular registration affidavits, keep attendance, and provide English-language instruction in broadly framed "areas of study." Cal. Educ. Code §§ 33190, 48222, 51210, 51220. For mathematics in grades 7-12, for example, a curriculum satisfies private-school content standards if it includes "instruction designed to develop mathematical understandings, operational skills, and insight into problem solving procedures." *Id.* § 51220(f). Beyond teaching those general principles, private schools do not need to follow any curricular requirements, and their students do not need to take any statewide tests. Nor does California require that private schools be accredited. *See Private Schools Frequently Asked Questions*, Cal. Dep't of Educ. (Sep. 3, 2025), www.cde.ca.gov/sp/ps/psfaq.asp [https://perma.cc/E Z8K-RUSH]. And private-school teachers do not need to be certified as long as they are "capable of teaching." Cal. Educ. Code § 48222.

Plaintiffs have alleged, and we take as true, that the defendant charter schools provide parents great flexibility to choose which pre-existing curricula to use to educate their children, or to create their own. But with that flexibility comes substantial legal constraints not applicable to private schools. Plaintiffs also emphasize that, unlike in Maine's (and most) public schools, students in the independent study programs receive instruction in their homes, and the direct

educators are their parents. But in contrast to private homeschooling, parents in independent study programs can teach only under the supervision of state employees. The extensive legal requirements applicable to the defendant charter schools' independent study programs make the programs sufficiently public to defeat Plaintiffs' free exercise claim.

## B.

Plaintiffs' compelled speech claim fares no better. It is premised on the argument that "[w]hen parents in the Blue Ridge and Visions programs select a diverse array of curricula for their children's diverse needs," the parents are speaking, not the government. However, we have held that a public school's curriculum is an "expression of its policy," *Downs v. L.A. Unified Sch. Dist.*, 228 F.3d 1003, 1013-15 (9th Cir. 2000), and that "information and speech . . . present[ed] to school children may be deemed to be part of the school's curriculum and thus School District speech," *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 728 (9th Cir. 2022). Government speech is "not subject to scrutiny under the Free Speech Clause." *Pleasant Grove City v. Summum*, 555 U.S. 460, 464 (2009). Moreover, the state "is not precluded from relying on the government-speech doctrine merely because it solicits assistance from nongovernmental sources." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 562 (2005).

Citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995), Plaintiffs also argue that a public school cannot discriminate against religious viewpoints when it creates a limited public forum. *Rosenberger*, however, involved a public university's refusal to fund an otherwise-eligible student news organization with a

religious viewpoint. *See id.* at 827. More importantly, it expressly recognized that "[w]hen the University determines the content of the education it provides, it is the University speaking." *Id.* at 833. Just so here. Blue Ridge and Visions, in refusing to permit the use of the requested curricular materials, determined the "content of the education" they would provide and any resulting speech in instruction was theirs, not that of Plaintiffs.

## III.

We **AFFIRM** the judgment of the district court.